OPINION
{¶ 1} Defendant-appellant the State of Ohio Department of Natural Resources appeals the August 20, 2007 Judgment Entry of the Tuscarawas County Court of Common Pleas, Conservancy Division, in favor of Plaintiff-appellee Muskingum Watershed Conservancy District.
 {¶ 2} The Muskingum Watershed Conservancy District (hereinafter "MWCD") was created in June of 1993 as part of a comprehensive flood control and water conservation project in the Muskingum River watershed. The boundaries of the MWCD are determined by the natural flow and drainage of water, and comprise all, or part of, eighteen counties in eastern Ohio. The MWCD is a political subdivision of the State of Ohio, organized under R.C. 6101. The MWCD is governed by a Conservancy Court, made up of one common pleas court judge from each of the eighteen counties. The Conservancy Court appoints a five-person Board of Directors to oversee the operation of the MWCD. The Conservancy Court hears appeals and/or objections to the MWCD's activities.
 {¶ 3} To manage the flow of water in the MWCD, a series of fourteen dams and reservoirs have been constructed. The dams are owned by the United States Army Corps of Engineers (hereinafter "USACE"), and the reservoirs behind them are owned by the MWCD.
 {¶ 4} The dams and reservoirs within the MWCD were designed with a general life expectancy of fifty years, and have reached nearly seventy years of service. They are in significant need of repair, and some are on the nationwide "urgent" list completed by the USACE. *Page 3 
 {¶ 5} Pursuant to R.C. 6101.53, the MWCD may levy a maintenance assessment in order to "maintain, operate, and preserve" the dams, reservoirs and other improvements constructed under the plan. A maintenance assessment, when levied, must be apportioned on the basis of an official appraisal of benefits performed by the Board of Appraisers of the MWCD.
 {¶ 6} In June of 2005, the MWCD Board of Directors and the Conservancy Court approved an Amendment to the Official Plan to identify maintenance needs in the watershed, establish a work plan and implement initiatives to enhance water quality and reduce flooding.
 {¶ 7} On March 9, 2006, the Board of Appraisers filed a Conservancy Appraisal Record, appraising and apportioning benefits of the MWCD. On April 10, 2006, Appellant State of Ohio Department of Natural Resources filed an exception to the Conservancy Appraisal Record. The State owned over 100,000 acres within the conservancy district.
 {¶ 8} On July 7, 2007, a three-judge panel of the Conservancy Court granted the MWCD's motion for summary judgment, denying the State's exception. On August 20, 2007, following an evidentiary hearing, the Conservancy Court, sitting en banc, confirmed the Conservancy Appraisal Record.
 {¶ 9} Appellant now appeals, assigning as error:
 {¶ 10} "I. THE COURT BELOW IMPROPERLY GRANTED SUMMARY JUDGMENT FOR THE MUSKINGUM WATERSHED CONSERVANCY DISTRICT, BECAUSE THE DISTRICT LACKS AUTHORITY TO LEVY ASSESSMENTS AGAINST THE STATE." *Page 4 
 {¶ 11} In the sole assignment of error, the State argues the conservancy district lacks statutory authority to levy assessments against the State or lands owned by the State. Specifically, the State asserts it has sovereign immunity prohibiting the MWCD from assessing the State or its property.
 {¶ 12} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court, Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35. This means we review the matter de novo, Doe v. Shaffer, 90 Ohio St.3d 388,2000-Ohio-186.
 {¶ 13} The Conservancy Act, embodied in R.C. 6101.53, provides:
 {¶ 14} "To maintain, operate, and preserve the reservoirs, ditches, drains, dams, levies, canals, sewers, pumping stations, treatment and disposal works, or other properties or improvements acquired or made pursuant to this chapter, to strengthen, repair, and restore the same, when needed, and to defray the current expenses of the conservancy district, the board of directors of the district may, upon the substantial completion of the improvements and on or before the first day of September in each year thereafter, levy an assessment upon each tract or parcel of land and upon each public corporation within the district, subject to assessments under this chapter, to be known as a conservancy maintenance assessment. * * *"
 {¶ 15} "Public corporations" are defined at R.C. 6101.01(C) as "counties, townships, municipal corporations, school districts, road districts, ditch districts, park districts, levee districts, and all other governmental entities vested with the power to levy assessments or taxes."
 {¶ 16} "Land" is defined at 6101.01(E) as: *Page 5 
 {¶ 17} "Real property as that term is used in and defined by the laws of this state, and includes all railroads, tram roads, roads, electric railroads, street and interurban railroads, streets and street improvements, telephone, telegraph, and transmission lines, gas, sewerage, and water systems, pipe lines and rights of way of public service corporations, and all other public or private real property."
 {¶ 18} Under the doctrine of sovereign immunity, statutes of general applicability do not apply to the State without the express authorization of the State legislature. State ex rel. Attorney Generalv. Cincinnati Central Ry. Co. (1881), 37 Ohio St. 157. Where the General Assembly intends to waive the State's sovereign immunity and apply general law to the State, the legislature must expressly waive said immunity. Id. The State's immunity includes exemption from taxation absent express authority. Williams v. Glander (1947), 148 Ohio St. 188.
 {¶ 19} The MWCD argues because the State is a public corporation under the statute (vis a vis a governmental entity vested with the power to levy assessments or taxes), based on the language of the statute, the legislature has expressly waived the State's sovereign immunity.
 {¶ 20} As noted supra, the definition of "public corporation" set forth above, includes "counties, townships, municipal corporations, school districts, road districts, ditch districts, park districts, levee districts, and all other governmental entities vested with the power tolevy assessments or taxes."
 {¶ 21} In Moulton Gas Serv., Inc. v. Zaino (2002), 97 Ohio St.3d 48, the Ohio Supreme Court held: *Page 6 
 {¶ 22} "When there is a listing of specific terms followed by a catchall word or phrase which is linked to the specific terms by the word `other,' and the statute is to be strictly construed, we apply the doctrine of ejusdem generis. In State v. Aspell (1967), 10 Ohio St.2d 1,39 O.O.2d 1, 225 N.E.2d 226, paragraph two of the syllabus we held: `Under the rule of ejusdem generis, where in a statute terms are first used which are confined to a particular class of objects having well-known and definite features and characteristics, and then afterwards a term having perhaps a broader signification is conjoined, such latter term is, as indicative of legislative intent, to be considered as embracing only things of a similar character as those comprehended by the preceding limited and confined terms.'"
 {¶ 23} Applying the doctrine of ejusdem generis, interpreting the statute to include the State of Ohio within the meaning of "other governmental entities vested with the power to levy assessments or taxes" is inconsistent with the features and characteristics of the class of entities comprehended in the preceding limited and confined terms. All the specific entities listed are political subdivisions of the State. Accordingly, we do not believe the statute demonstrates the General Assembly's unambiguous intent to waive the State's sovereign immunity.
 {¶ 24} Similarly, the use of "and all other public and private property" within the definition of land does not demonstrate the General Assembly's intent to waive the State's sovereign immunity.
 {¶ 25} In the absence of express waiver, the General Assembly's intent to waive the State's sovereign immunity must be "necessarily implied."Cincinnati Cent. Ry, 37 Ohio St. 176. The doctrine requires more than a mere inference. Rather, the statute *Page 7 
must unavoidably waive the State's immunity in order for the MWCD to levy the assessment. Id. We find MWCD has not established waiver of the State's sovereign immunity exemption is necessarily implied in the statues which address this assessment.
 {¶ 26} The August 20, 2007 Judgment Entry of the Tuscarawas County Court of Common Pleas, Conservancy Division is reversed.
 Hoffman, P.J., Wise, J. and Edwards, J. concur. *Page 8 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the August 20, 2007 Judgment Entry of the Tuscarawas County Court of Common Pleas, Conservancy Division is reversed. Costs assessed to Appellee. *Page 1