| | |
|---|---|
| MONIQUE ZAVINSKI | Case No. 2013-00452JD |
| Plaintiff | Judge Patrick M. McGrath |
| v. | <u>DECISION</u> |
| OHIO DEPARTMENT OF TRANSPORTATION | |
| Defendant | |

{¶1} Before the court are the following filings:

(1) written objections filed on January 18, 2018 by plaintiff Monique Zavinski, executrix of the estate of Dennis Zavinski, deceased, to Magistrate Anderson M. Renick's decision of January 4, 2018;

(2) a document labeled "Notice of Intent to Submit Relevant Portions of Transcript In Support of Her Civ.R. 53 Objections to Magistrate's Decision" filed on January 18, 2018 by Zavinski;

(3) a document labeled "State of Ohio's Objection And Response To Plaintiff's Objections" filed on January 29, 2017 by Ohio Department of Transportation (ODOT);

(4) a document labeled "Plaintiff's Memorandum (1) In Response To ODOT's Civ.R. 53 Objection And (2) Plaintiff's Reply In Support of Her Civ.R. 53 Objections" filed on February 7, 2018 by Zavinski; and

(5) a document labeled "Plaintiff's Notice Of Filing Relevant Portions Of Transcript In Support Of Plaintiff's Civ.R.53 Objections to Magistrate's Decision" filed on February 7, 2018 by Zavinski.

{¶2} For reasons set forth below, the court determines that (1) Zavinski's first objection should be overruled, (2) Zavinski's second objection should be sustained, (3) Zavinski's third objection should be sustained, (4) Zavinski's fourth objection should be overruled in part and sustained in part, and (5) Zavinski's fifth objection should be overruled. The court also determines that ODOT's objection should be overruled. The

court further determines that the magistrate's decision should be modified, that the magistrate's findings of fact contained in the decision should be adopted, and that the magistrate's conclusions of law should be modified.

## I. Background

{¶3} Monique Zavinski brought this case against ODOT, alleging wrongful death, negligence, nuisance, and loss of consortium on behalf herself, as the surviving spouse of Dennis Zavinski, and the heirs of his estate. Zavinski's case arose from an accident on September 10, 2011, on State Route 411 in Streetsboro, Ohio, in which a truck driven by Freddie Pampley collided with a vehicle operated by Dennis Zavinski, which resulted in the death of Dennis Zavinski. The court bifurcated the issues of liability and damages for the purpose of trial.

{¶4} On July 18, 2016, Magistrate Renick issued a decision concluding that Monique Zavinski's nuisance claim merged with allegations of negligence and finding that Zavinski had proven her claim of negligence. The magistrate determined that, pursuant to R.C. 2307.23(A), the percentage of tortious conduct that proximately caused the wrongful death was attributable fifty percent to Pampley and fifty percent to ODOT. The magistrate recommended a judgment in favor of Zavinski with a fifty percent reduction to account for Pampley's negligence. Both parties objected to the magistrate's liability determination. On January 5, 2017, the court overruled the parties' objections and it adopted the magistrate's decision and recommendation as its own.

{¶5} After the court overruled the parties' objections to the magistrate's liability determination, the court, through Magistrate Renick, held a trial on the issue of damages. On January 4, 2018, Magistrate Renick issued a decision wherein he recommended non-economic damages in the amount of $2,500,000 for loss of society and mental anguish, and $478,522 for economic damages, which resulted in a recommended total damages award of $2,978,522. After reducing this award by fifty-percent, Magistrate Renick determined that amount of damage attributed to ODOT's

negligence constituted $1,489,261. After finding that Zavinski received "collateral benefits," Magistrate Renick reduced the recovery against the state by the amount of collateral benefits and he recommended "monetary damages for plaintiff's wrongful death claim in the amount of $195,810.72, which represents total damages ($1,489,261) less collateral benefits that were received by plaintiff ($1,293,475.28), plus the $25 filing fee." (Magistrate's Decision, at 7.)

{¶6} On January 18, 2018, Zavinski objected to Magistrate Renick's decision wherein she presents five written objections:

1. The Magistrate improperly found the $885,000 paid by the uninsured motorist carrier on behalf of a joint tortfeasor to be a "collateral benefit" and improperly deducted that sum from the amount of monies due and owing from the Ohio Department of Transportation ('ODOT') (p. 7 of Magistrate's Decision, January 4, 2018);

2. The Magistrate improperly determined that the payment made to the estate of Dennis Zavinski in the amount of $125,000, representing one-half of his interest in his law firm, was a "collateral benefit" and improperly deducted $125,000 from the amount due and owing from ODOT (p. 7 of Magistrate's Decision, January 4, 2018);

3. The Magistrate improperly determined the sum of $33,475.28, representing fees due and payable to Dennis Zavinski, deceased, from his practice of law prior to his death on September 10, 2011, was a "collateral benefit" and improperly deducted $33,475.28 (p. 7 of the Magistrate's Decision, January 4, 2018) from the amount due and owing from ODOT;

4. The Magistrate improperly deducted the total sum of $1,043,475.28 from the amount due and owing from ODOT thereby leaving a balance of $195,810.072 due and owing from ODOT [footnote omitted];

5. R.C. §2743.02(D), as applied by the Magistrate, is unconstitutional. Such an application constitutes an unjust taking and violates the equal protection and due process clause of the Constitution of the United States. Furthermore, R.C. 2743.02(D), applied by the Magistrate, violates the equal protection and due process clauses of the Ohio Constitution, violates the Open Court provision guaranteed by the Ohio Constitution

and violates Article I § 19 of the Ohio Constitution which proscribes any limit on wrongful death damages.

**{¶7}** On January 29, 2018, ODOT filed a document that contained (1) an objection to the magistrate's non-economic award of $2,500,000 and (2) a response to Zavinski's written objections.  On February 7, 2018 Zavinski filed a document containing a response to ODOT's objection and a reply in support of her written objections.  And on February 7, 2018, Zavinski also filed a notice indicating that she filed an excerpt of a transcript relative to the trial on damages.  Later, on February 15, 2018, ODOT filed a transcript (volumes I and II) of the damages trial that was held before Magistrate Renick.

## II.  Law and Analysis

**{¶8}** Civ.R.  53(D)(3)(b) pertains to objections to a magistrate's decision.  Pursuant to Civ.R. 53(D)(3)(b)(i), a party "may file written objections to a magistrate's decision within fourteen days of the filing of the decision, whether or not the court has adopted the decision during that fourteen-day period as permitted by Civ.R. 53(D)(4)(e)(i).   If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed."

**{¶9}** Notably, Civ.R.  53(D)(3)(b)(i) *does not* expressly permit a party to file a response to another party's objections.  Neither do the Rules of the Court of Claims (C.C.R.) permit a party to file a response to another party's objections.  Also, this court's local rules do not permit a party to submit a brief in opposition to a party's objections to a magistrate's decision.  *See* L.C.C.R.  4(C) (permitting a party to file a brief in opposition to a motion); *see also* L.C.C.R. 24(B)(1) (reparation appeals) (permitting a party to file written objections within fourteen days of the filing of a magistrate's decision and permitting any other party to file objections not later than ten days after the first objections are filed).  Because Civ.R. 53(D)(3)(b)(i), the Rules of the Court of Claims, and this court's local rules do not permit the filing of a response to another party's

objections, the court finds that ODOT's response in opposition to Zavinski's objections and that Zavinski's response to ODOT's objection are procedurally irregular. Moreover, because Civ.R. 53(D)(3)(b)(i), the Rules of the Court of Claims, and this court's local rules do not permit a party to submit a reply in support of written objections, Zavinski's reply in support of her objections is procedurally irregular. Compare L.C.C.R. 4(C) (permitting a party opposing a motion to file a brief written statement of reasons in opposition to a motion and stating that reply briefs or additional briefs "may be filed only upon a showing of the necessity therefor and with leave of court").

{¶10} With respect to the specificity of an objection, Civ.R. 53(D)(3)(b)(ii) provides, "An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." And, according to Civ.R. 53(D)(3)(b)(iii):

> An objection to a factual finding, whether or not specifically designated as a finding of fact under Civ.R. 53(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available. With leave of court, alternative technology or manner of reviewing the relevant evidence may be considered. The objecting party shall file the transcript or affidavit with the court within thirty days after filing objections unless the court extends the time in writing for preparation of the transcript or other good cause. If a party files timely objections prior to the date on which a transcript is prepared, the party may seek leave of court to supplement the objections.

Here, with Zavinski's objections of January 18, 2018, Zavinski filed a notice indicating that she intended to submit relevant portions of the trial transcript to support her objections. Twenty days later—on February 7, 2018—Zavinski filed an excerpt of volume 2 of the damages trial before Magistrate Renick. And ODOT filed a transcript of the damages trial on February 15, 2018—17 days after ODOT filed its objection.

{¶11} Civ.R. 53(D)(4) governs a court's action on objections to a magistrate's decision. Civ.R. 53(D)(4)(d) provides, "If one or more objections to a magistrate's

decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate." A magistrate's decision "is not effective unless adopted by the court." Civ.R. 53(D)(4)(a).

{¶12} When this court independently reviews objections to a magistrate's decision, this court may give weight to a magistrate's assessment of witness credibility in view of a magistrate's firsthand exposure to the evidence. *See Siegel v. Univ. of Cincinnati College of Medicine*, 2015-Ohio-441, 28 N.E.3d 612, ¶ 12 (10th Dist.) ("'Although the trial court may appropriately give weight to the magistrate's assessment of witness credibility in view of the magistrate's firsthand exposure to the evidence, the trial court must still independently assess the evidence and reach its own conclusions.' *Sweeney v. Sweeney*, 10th Dist. No. 06AP-251, 2006-Ohio-6988, ¶ 15, citing *DeSantis v. Soller*, 70 Ohio App.3d 226, 233, 590 N.E.2d 886 (10th Dist.1990)"). Thus, in this instance, the court properly may give weight to Magistrate Renick's assessment of the credibility of the parties' witnesses.

### A. ODOT's objection to the magistrate's award of non-economic damages in the amount of $2,500,000 for Monique Zavinski's loss of society and mental anguish is not well-taken.

{¶13} By its objection, ODOT essentially urges that the magistrate's non-economic award of $2,500,000 is not a fair and reasonable judgment reflecting the loss in this case.

{¶14} R.C. 2125.02 governs an award of damages in a wrongful-death action. Pursuant to R.C. 2125.02(A)(2), if a civil action for wrongful death is not tried to a jury, a court may award damages authorized by R.C. 2125.03(B), "as it determines are

proportioned to the injury and loss resulting to the beneficiaries described in [R.C. 2125.02(A)(1)] by reason of the wrongful death and may award the reasonable funeral and burial expenses incurred as a result of the wrongful death. * * *." R.C. 2125.02(B) provides:

> Compensatory damages may be awarded in a civil action for wrongful death and may include damages for the following:
>
> (1) Loss of support from the reasonably expected earning capacity of the decedent;
>
> (2) Loss of services of the decedent;
>
> (3) Loss of the society of the decedent, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education, suffered by the surviving spouse, dependent children, parents, or next of kin of the decedent;
>
> (4) Loss of prospective inheritance to the decedent's heirs at law at the time of the decedent's death;
>
> (5) The mental anguish incurred by the surviving spouse, dependent children, parents, or next of kin of the decedent.

In *Phillips v. Miller*, 10th Dist. Franklin No. 88AP-147, 1988 Ohio App. LEXIS 5342, at *8-10 (Dec. 22, 1988), construing R.C. 2125.02(B), the Tenth District Court of Appeals explained:

> Although R.C. 2125.02(B) states that the jury "may" include damages for any of those specified losses listed in R.C. 2125.02(B)(1) through (5), the jury abuses its discretion where it does not award damages where there is unrebutted competent, credible evidence going to any of the losses specified under R.C. 2125.02(B). It also should be noted, that the aforementioned list is not all inclusive.
>
> By statutory definition, loss of society is broadly defined as the statute is not all inclusive and relates to those areas where decedent improved or enhanced the quality of the beneficiaries every day life. * * *
>
> * * *

*  *  * Only a spouse can recover damages for loss of consortium. *  *  *

Here, according to the filed transcript and transcript excerpt, ODOT did not call any witnesses. Thus, as to the issues of loss of society and mental anguish, the testimony before the magistrate, as the trier-of-fact, consisted of the testimony offered by witnesses called by Zavinski. Magistrate Renick summarized the testimony of Zavinski and each of the lay witnesses, noting that Zavinski "was not the same person" without her husband, her appearance had deteriorated significantly, she changed from a "beautiful, classy, funny, and delightful woman" to a woman who is "very depressed and physically distressed" due, in part, to a lack of sleep and inadequate diet. (Magistrate's Decision, 5-6.) Indeed, at trial Bernard Perisse, Zavinski's brother, testified: "Before Dennis died, Monique was optimistic. She was a happy person. She was an outgoing person. She liked talking to people, and she changed. She has changed a lot. Now she's pessimistic. She's sad, depressed, I believe. She is always under stress, constant stress, and she's very unhappy now." (Tr., 28-29.) And when Perisse was asked about Zavinski's sleeping and eating, Perisse testified: "Well, she -- as you see her, she's very skinny. She is never hungry. That's a big concern regarding her health. She's not – from a physical point of view, her health has been affected by Dennis' death. She is physically and emotionally affected. She was affected, and she is still affected." (Tr., 30.)

{¶15} Upon independent review of the evidence presented at the damages trial, the court concludes that the impact of Zavinski's loss of her husband has been generally devastating to Zavinski as reflected in a deterioration of her physical condition and emotional state, which has persisted during the years following her husband's wrongful death.

{¶16} The court determines that Magistrate Renick's recommendation for a non-economic award of $2,500,000 is justified. The court overrules ODOT's objection.

**B. Zavinski's Fifth Objection—As-applied constitutional challenge to R.C. 2743.02(D).**

{¶17} By her fifth objection, Zavinski contends that R.C. 2743.02(D), as applied by Magistrate Renick, is unconstitutional (1) because it constitutes an unjust taking in violation of the equal protection and due process clauses of the United States Constitution, and (2) because Magistrate Renick's application of R.C. 2743.02(D) violates the equal protection and due process clauses of the Ohio Constitution and "the Open Court provision guaranteed by the Ohio Constitution and violates Article I § 19 of the Ohio Constitution which proscribes any limit on wrongful death damages."

{¶18} Zavinski's fifth objection constitutes an as-applied constitutional challenge to R.C. 2743.02(D). Thus, Zavinski's fifth objection essentially raises a constitutional claim. The Tenth District Court of Appeals, however, has determined that constitutional claims are not actionable in this court. *See White v. Ohio Dept. of Rehab. & Correction*, 10th Dist. Franklin No. 12AP-927, 2013-Ohio-4208, ¶ 17; *Wassenaar v. Ohio Dept. of Rehab. & Correction*, 10th Dist. Franklin Nos. 07AP-712, 07AP-772, 2008-Ohio-1220, ¶ 28. Because Zavinski's fifth objection raises constitutional claims that are not actionable in this court, the court determines that Zavinski's fifth objection should be overruled.

**C. Zavinski's First, Second, Third, and Fourth Objections—Non-constitutional challenges to the magistrate's application of R.C. 2743.02(D).**

{¶19} Zavinski's first, second, third, and fourth objections ask the court to examine (1) whether the magistrate properly determined that $885,000 in uninsured motorist proceeds is a "collateral benefit" that should have been applied against the recovery against ODOT (first objection); whether the magistrate properly determined that a payment in the amount of $125,000 that represents a one-half interest in Zavinski's deceased husband's law firm is a "collateral benefit" that should have been applied against the recovery against ODOT (second objection); whether the magistrate

properly determined that the sum of $33,475.28 that represents fees due and payable to her deceased husband before his death on September 10, 2011 is "collateral benefit" that should have been applied against the recovery against ODOT (third objection); and whether the magistrate properly determined that the sum of $1,043,475.28 ($885,000 + $125,000 + $33,475.28) should have been deducted from the amount due from ODOT because this amount constituted a "collateral benefit" (fourth objection).

### 1. Overview of R.C 2743.02(D) (reduction of recoveries against the state of Ohio)

{¶20} In Am.Sub.H.B. No. 800, effective January 1, 1975, the General Assembly enacted R.C. 2743.01 to 2743.20 for the purpose of waiving the state's sovereign immunity from liability and permitting suits against the state to be brought in this court. Am.Sub.H.B. No. 800, 135 Ohio Laws, Part II, 869. As originally enacted, R.C. 2743.02(B) provided: "Awards against the state shall be reduced by the aggregate of insurance proceeds, disability award, or other collateral recovery by the claimant." *Id.* at 872. In a summary of Am.H.B. No. 800, the Ohio Legislative Service Commission (LSC) stated, "Any award to a successful claimant against the state must be reduced * * * by the amount of insurance the claimant receives." Summary of 1974 Enactments: January-July, 110th General Assembly, Ohio Legislative Service Commission (July 1974). Thus, as understood by the LSC, if a claimant successfully recovered an award against the state, the amount of insurance a claimant received was intended to be applied to reduce the award against the state.

{¶21} In Am.Sub.H.B. No. 800 the General Assembly, however, did not define the term "other collateral recovery." *See* Am.Sub.H.B. No 800, 135 Ohio Laws, Part II, at 871-872. And in subsequent legislation wherein the General Assembly enacted definitions for use in R.C. Chapter 2743 the General Assembly has not defined the term "other collateral recovery." *See* Sub.H.B. No 82, 136 Ohio Laws, Part I, 1504;

Am.Sub.S.B. No. 76, 138 Ohio Laws, Part I, 266; 289, and Sub.H.B. No. 316, 150 Ohio Laws, Part IV, 5438, 5444.

{¶22} The General Assembly's failure to define the term "other collateral recovery" has left this term open to various interpretations, thereby creating an ambiguity as to its meaning. *See Caldwell v. State*, 115 Ohio St. 458, 460, 154 N.E. 792 (1926) ("[a]n ambiguity is defined as doubtfulness or uncertainty; language which is open to various interpretations or having a double meaning; language which is obscure or equivocal"). R.C. 1.49 pertains to ambiguous statutes, providing: "If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters: (A) The object sought to be attained; (B) The circumstances under which the statute was enacted; (C) The legislative history; (D) The common law or former statutory provisions, including laws upon the same or similar subjects; (E) The consequences of a particular construction; (F) The administrative construction of the statute." And R.C. 1.42 directs: "Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."

{¶23} In common usage, the term "collateral" means "[s]upplementary; accompanying, but secondary and subordinate to," *Black's Law Dictionary* 317 (10th Ed.2014), and the term "recovery" means the "obtainment of a right to something * * *." *Black's Law Dictionary* at 1466. When the General Assembly originally enacted R.C. 2743.02, *see* former R.C. 2743.02(B), *see also* Am.Sub.H.B. No. 800, 135 Ohio Laws, Part II, 869, 872, the term "other collateral recovery" followed the terms "insurance proceeds" and "disability award," which are a particular class of objects having well-known characteristics, thereby implicating the canon of statutory construction known as *ejusdem generis*. As explained by the Ohio Supreme Court:

> A well-known legal maxim is '*ejusdem generis*,' which literally translated means 'of the same kind or species.' So, where in a statute terms are first used which are confined to a particular class of objects having well-known and definite features and characteristics, and then afterwards a term is conjoined having perhaps a broader signification, such latter term is, as indicative of legislative intent, to be considered as embracing only things of a similar character as those comprehended by the preceding limited and confined terms.

*State v. Aspell*, 10 Ohio St.2d 1, 4, 225 N.E.2d 226 (1967). And as further explained by the Ohio Supreme Court: "Under the canon of statutory construction commonly referred to as *ejusdem generis* (literally 'of the same kind'), whenever words of general meaning follow the enumeration of a particular class, then the general words are to be construed as limited to those things which pertain to the particularly enumerated class." *Akron Home Med. Servs., Inc. v. Lindley*, 25 Ohio St.3d 107, 109, 495 N.E.2d 417 (1986). Application of the statutory construction canon of *ejusdem generis* to the statute compels a conclusion that, in determining that awards against the state should be reduced, the General Assembly originally intended that the term "other collateral recovery" should refer to items that pertain to the particularly enumerated class, e.g., insurance proceeds and disability awards. Stated differently, the term "other collateral recovery" should be interpreted to refer to items that are akin to insurance proceeds and disability awards.

{¶24} Subsequent versions of the statute, have retained the terms "insurance proceeds," "disability award," and "other collateral recovery." *See* Am.Sub.H.B. No. 682, 136 Ohio Laws, Part II, 2809, 2823; Am.Sub.H.B. No. 1192, 136 Ohio Laws, Part II, 3591, 3592; Sub.H.B. No. 82, 136 Ohio Laws, Part I, 1504, 1506; Am.Sub.H.B. No. 149, 137 Ohio Laws, Part I, 1950, 1951; Am.Sub.S.B. No. 76, 138 Ohio Laws, Part I, 266, 280; Sub.H.B. No. 267, 142 Ohio Laws, Part II, 3134, 3135; Am.Sub.H.B. No. 111, 143 Ohio Laws, Part II, 2351, 2415; Sub.S.B. No. 172, 145 Ohio Laws, Part I, 1821, 1824; Am.Sub.S.B. No. 115, 149 Ohio Laws, Part II, 3231, 3238; Am.Sub.S.B.

No. 281, 149 Ohio Laws, Part II, 3791, 3839; Am.Sub.H.B. No. 95, 150 Ohio Laws, Part I, 396, 847; Sub.S.B. No. 316, 150 Ohio Laws, Part, IV, 5438, 5446; Sub.H.B. No. 25, 151 Ohio Laws, Part II, 2784, 2787; (2012) Am.Sub.H.B. No. 487, 129th G.A., http://archives.legislature.state.oh.us/BillText129/129_HB_487_EN_N.html (accessed 2/12/2018).

{¶25} Former R.C. 2743.02(B) is now codified in division (D) of R.C. 2743.02. R.C. 2743.02(D) provides:

> *Recoveries against the state shall be reduced by the aggregate of insurance proceeds, disability award, or other collateral recovery received by the claimant.* This division does not apply to civil actions in the court of claims against a state university or college under the circumstances described in section 3345.40 of the Revised Code. The collateral benefits provisions of division (B)(2) of that section apply under those circumstances.

(Emphasis added.) Since the General Assembly retained the terms "insurance proceeds," "disability award," and "other collateral recovery" in R.C. 2743.02(D), it is reasonable to conclude that the General Assembly still intends that the term "other collateral recovery" should be interpreted to refer to items that are akin to insurance proceeds and disability awards. *Accord Buchman v. Bd. of Edn.*, 73 Ohio St.3d 260, 265, 652 N.E.2d 952 (1995) (holding that Social Security and Medicare benefits are the type of collateral source benefits contemplated by R.C. 2744.05(B)"). *But see Adae v. State*, 10th Dist. Franklin No. 12AP-406, 2013-Ohio-23, ¶ 18, fn. 3 ("currently R.C. 2743.02(D), more broadly states that awards against the state 'shall be reduced by the aggregate of insurance proceeds, disability award, or other collateral recovery received by the claimant'"). And, according to R.C. 2743.02(D), such other collateral recovery received by a claimant should be applied to reduce a recovery against the state. *Compare Black's Law Dictionary*, *supra*, at 319 (defining "collateral-sources rule" as "[t]he doctrine that if an injured party receives compensation for the injuries from a source independent of the tortfeasor, the payment should not be deducted from the

damages that the tortfeasor must pay"); 3 Dobbs, Hayden, & Bublick, *The Law of Torts*, Section 482, 25 (2d Ed.2011) ("The traditional rule is that compensation from 'collateral sources' is none of the defendant's business and does not go to reduce the defendant's obligation to pay damages, either in negligence or in strict liability cases" (footnotes omitted)).

> **2. Precedent of the Tenth District Court of Appeals discussing the offset for collateral recovery under R.C. 2743.02(D) indicates that R.C. 2743.02(D) should be interpreted to contain a "matching" requirement.**

{¶26} The Tenth District Court of Appeals is the court of appeals to which appeals from this court generally lie. *See* R.C. 2743.20 and 2501.01. Determinations from the Tenth District Court of Appeals discussing the offset for collateral recovery under R.C. 2743.02(D) constitute precedent that this court is required to follow. *See Black's Law Dictionary* 1366 (10th Ed. 2014) (defining "binding precedent" as a "precedent that a court must follow").

{¶27} Since 1975, when the General Assembly enacted R.C. 2743.02, the Tenth District Court of Appeals has construed the term "other collateral recovery" to have a particular meaning. For example, in 1996 in *Van Der Veer v. Ohio Dept. of Transp.*, 113 Ohio App.3d 60, 68-69, 680 N.E.2d 230 (10th Dist.1996), overruled in part on other grounds by *McMullen v. Ohio State Univ. Hosp.*, 10th Dist. Franklin No. 97API10-1301, No. 97API10-1324, 1998 Ohio App. LEXIS 4436 (Sep. 22, 1998), the Tenth District Court of Appeals examined whether this court erred when it concluded that life insurance proceeds received by reason of a wrongful death were "collateral sources" within the meaning of R.C. 2743.02(D). The *Van Der Veer* court stated that

> the burden of proving that one is entitled to an offset for collateral benefits is on the defendant, which is the state in this case. Cf. *Buchman, supra* (construing R.C. 2744.05[B] which provided for reducing a judgment against a political subdivision by the amount of collateral benefits received by a claimant). In *Buchman*, the Ohio Supreme Court also found that a

collateral benefit could only be deducted from the jury's award if some portion of that jury award corresponded to the collateral benefit. Thus, where the children of a decedent had received social security benefits, but no part of the jury's verdict was awarded to decedent's children, the court refused to offset the verdict by the social security benefits that the children had received. *Buchman, supra,* 73 Ohio St. 3d at 265. As noted by the *Buchman* court:

> "* * * Although *Morris* and *Sorrell* evince a certain amount of tension on the court over the viability of collateral benefit offset statutes, the one inexorable source of agreement seems to be that *there shall be no constitutionality without a requirement that deductible benefits be matched to those losses actually awarded* by the jury." (Emphasis added.) *Id.* at 269.

See, also, *Freeman v. University of Cincinnati* (1989), Ohio Ct.Cl. No. 87-07908, unreported.

And two years later in *McMullen*, 10th Dist. Franklin No. 97API10-1301, No. 97API10-1324, 1998 Ohio App. LEXIS 4436, at *29-31 (Sep. 22, 1998), *rev'd*, 88 Ohio St.3d 332, 725 N.E.2d 1117 (2000), the Tenth District Court of Appeals stated:

> Although the legislative intent behind both R.C. 2743.02(D) and 3345.40(B)(2) appears to have been that the aggregate of all collateral benefits received by a claimant, or plaintiff, or, in the case of a wrongful death action, the beneficiaries who the claimant or plaintiff represent, be deducted from the aggregate damage award, the Ohio Supreme Court has clearly disallowed such an approach. *Buchman v. Wayne Trace Local School Dist. Bd. of Edn.* (1995), 73 Ohio St. 3d 260, 266-269, 652 N.E.2d 952.

> In *Buchman*, the Supreme Court was faced with a claim that R.C. 2744.05(B), the collateral offset provision applicable to suits against political subdivisions, violated Section 16, Article I of the Ohio Constitution (due process) in that it called for damages awarded against a political subdivision to be offset by the aggregate of collateral benefits received by the claimant. In addressing this claim, the Supreme Court held that in order for a collateral offset statute to comport with state due process requirements, the statute may permit collateral benefits to be deducted

from a damage award "only to the extent that the loss for which [the collateral benefits] [compensate] is actually included in the [damage] award," a concept which the court referred to as "matching." *Id.* at 269. Applying the "matching" requirement to the statute before it, the *Buchman* court concluded that R.C. 2744.05(B) was capable of a construction which would permit "matching," and thereby avoided holding the statute unconstitutional. Because the language of R.C. 2744.05(B) is virtually identical to that of R.C. 3345.05(B)(2), we hold that it is also capable of being construed to permit "matching."

Less than a year after *Buchman* was decided, this court applied the "matching" requirement to R.C. 2743.02(D) in *Van Der Veer, supra.* * * *.

And in 1998 in *Nevins v. Ohio Dept. of Transp.*, 132 Ohio App.3d 6, 22, 724 N.E.2d 433 (10th Dist.1998), the Tenth District Court of Appeals construed R.C. 2743.02(D), stating:

R.C. 2743.02(D) provides in part that "recoveries against the state shall be reduced by the aggregate of insurance proceeds, disability award, or other collateral recovery received by the claimant." Black's Law Dictionary (6 Ed.1991) 179, defines the term collateral to mean additional, supplementary, complementary or accompanying as a coordinate. The Ohio Supreme Court has held that a collateral benefit is deductible as a setoff only to the extent that the loss for which it collaterally compensates is included in the award. *Buchman v. Wayne Trace Local School Dist. Bd. of Edn.* (1995), 73 Ohio St. 3d 260, 652 N.E.2d 952. A deductible benefit must be matched to the award for which setoff is sought. *Van Der Veer v. Ohio Dept. of Transp.* (1996), 113 Ohio App. 3d 60, 69, 680 N.E.2d 230. See, also, *Cincinnati Ins.*, *supra*. In other words, a collateral source benefit is one that is in excess of one hundred percent of the total damages awarded to the plaintiff.

Taken together, *Van Der Veer*, *McMullen*, and *Nevins* indicate that R.C. 2743.02(D) should be interpreted to contain a "matching" requirement, which means that this court should deduct collateral benefits from a recovery against the state only to the extent that the loss for which the collateral benefits compensate is actually included in the damage award. *See McMullen*, *supra*. *Accord Buchman v. Bd. of Edn.*, 73 Ohio St.3d 260, 269, 1995-Ohio-136, 652 N.E.2d 952 (1995) (holding that under R.C. 2744.05(B), a collateral

benefit "is deductible only to the extent that the loss for which it compensates is actually included in the jury's award"). It follows therefore that, if a collateral benefit does not compensate for a loss that is actually included in the damage award, then, based on *Van Der Veer*, *McMullen*, and *Nevins*, such a collateral benefit should not be deducted from a recovery against the state pursuant to R.C. 2743.02(D).

**3. The magistrate properly concluded that a payment to Zavinski in the amount of $885,000 in uninsured motorist proceeds should be applied to reduce Zavinski's recovery against ODOT.**

{¶28} By her first objection, Zavinski asserts that the magistrate improperly found that $885,000 in uninsured motorist proceeds constituted a "collateral benefit." Zavinski contends that the payment of $885,000 "was in settlement of Plaintiff's claims against the tortfeasors Pamphley and his employer J.R. Trucking Co. for Pamphley's negligence that contributed to the wrongful death of Dennis Zavinski on September 10, 2011. That payment of $885,000 by the uninsured motorist carriers was made solely because of the negligence of Pamphley. Plaintiff did not receive $885,000 from the uninsured motorist carriers simply because Mr. Zavinski died." (Objections, 3.) For its part, ODOT contends that "[i]t is undisputed that Mrs. Zavinski received $885,000 in insurance proceeds as a result of her husband being killed by an uninsured motorist. Since insurance money is specifically recognized by the statute as a collateral source set-off, Plaintiff's award must be reduced by this collateral recovery."

{¶29} Zavinski's first objection challenges the magistrate's application of R.C. 2743.02(D), which provides: "Recoveries against the state shall be reduced by the aggregate of insurance proceeds, disability award, or other collateral recovery received by the claimant. * * *." On its face, R.C. 2743.02(D) requires that insurance proceeds received by a claimant—from any source—are to be applied against a recovery against the state. But, notwithstanding the plain language of R.C. 2743.02(D), in 1998 in *Nevins* the Tenth District Court of Appeals indicated that former R.C. 2743.02(D) should

be interpreted to contain a matching requirement.  *See Nevins, supra,* at 22 (stating that "[a] deductible benefit must be matched to the award for which setoff is sought").  Here, because the payment arising from uninsured motorist coverage is related to ODOT's joint tortfeasor's conduct, *Nevins* arguably could be interpreted to mean that the payment of $885,000 in uninsured motorist proceeds should be matched to the award against the joint tortfeasor in this case.  And, if this interpretation were to be followed in this case, the payment of $885,000 in uninsured motorist proceeds should not be applied to reduce the award of recovery against ODOT.  Alternatively, *Nevins* arguably could be interpreted to mean that in this instance the payment of $885,000 in uninsured motorist proceeds is a collateral source benefit because the loss for which it collaterally compensates, e.g., the death of Dennis Zavinski, is included in the award against ODOT.  The holding of *Nevins* as applied to the facts of this case is indeterminate.

**{¶30}** Notably, since the Tenth District Court of Appeals issued *Nevins*, the General Assembly has amended R.C. 2743.02.   And in the General Assembly's most recent amendment of R.C. 2743.02, the General Assembly has retained language that states that recoveries against the state "shall be reduced by the aggregate of insurance proceeds, disability award, or other collateral recovery received by the claimant."   (2012) Am.Sub.H.B. No. 487, 129th G.A., http://archives.legislature.state.oh.us/BillText129/129_HB_487_EN_N.html (accessed 2/12/2018).  Thus, the General Assembly, in its role as the final arbiter of public policy, has indicated that insurance proceeds—from whatever source—shall be applied to reduce a recovery against the state.

**{¶31}** The Ohio Supreme Court has held that "the intent of the law-makers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation.  The question is not what did the general assembly intend to enact, but what is the meaning of that which it did

enact. That body should be held to mean what it has plainly expressed, and hence no room is left for construction." *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. *Accord Probasco v. Raine*, 50 Ohio St. 378, 391, 34 N.E. 536 (1893) ("When the legislature is silent, the courts may declare the public policy, and mark out the lines of natural justice; but when the legislature has spoken, within the powers conferred by the constitution, its duly enacted statutes form the public policy, and prescribe the rights of the people, and such statutes must be enforced, and not nullified, by the judicial and executive departments of the state").

{¶32} Accordingly, because *Nevins* could be construed in a manner so as to support the reduction of the recovery against ODOT by $885,000 in uninsured motorist proceeds and because R.C. 2743.02(D), as most recently enacted, expressly includes the term "insurance proceeds," the court determines that the magistrate properly concluded that a payment to Zavinski in the amount of $885,000 in uninsured motorist proceeds should be applied to reduce Zavinski's recovery against ODOT. The court further determines that Zavinski's first objection should be overruled.

**4. The magistrate improperly determined that payment of one-half interest in Zavinski's deceased husband's law firm and fees from her deceased husband's law practice should be applied to reduce Zavinski's recovery against ODOT.**

{¶33} By her second objection, Zavinski contends that the magistrate "improperly determined that the payment made to the estate of Dennis Zavinski in the amount of $125,000, representing one-half of his interest in his law firm, was a 'collateral benefit' and improperly deducted $125,000 from the amount due and owing from ODOT." And by her third objection, Zavinski asserts that the magistrate "improperly determined the sum of $33,475.28, representing fees due and payable to Dennis Zavinski, deceased, from his practice of law prior to his death on September 10, 2011, was a 'collateral benefit' and improperly deducted $33,475.28." The court is persuaded that, based on

*Nevins*, *supra*, the magistrate improperly deducted the amounts of $125,000 and $33,475.28 from the award of recovery against ODOT.

{¶34} In *Nevins*, in a case removed to this court, a jury found Concrete Construction Company (Concrete) liable to the plaintiffs and awarded damages in the amount of $1,654,417.62. In a companion case, this court found ODOT liable, and awarded the plaintiffs $1,570,000 in damages against ODOT. This award was adjusted to reflect an offset due to the contributory negligence of one of the plaintiffs. Final judgments were entered in the two cases, and consolidated appeals followed. On appeal, ODOT asserted that this court failed to deduct collateral sources pursuant to R.C. 2743.02(D). The appellate court overruled ODOT's assignment of error, stating:

> As noted by the trial court, the damages awarded against Concrete were not supplemental to those awarded against ODOT. Rather, the damages constituted Concrete's proportionate share of the Nevins' entire damage award. The Nevins' damages attributable to Concrete are, therefore, not collateral to or additional to ODOT's share, but are part of the primary damages awarded to the Nevins. The damages awarded against Concrete make up their share of the one hundred percent total damages awarded to the Nevins, and are not a collateral source under R.C. 2743.02(D). Therefore, the trial court did not err in refusing to set off ODOT's damages against those of Concrete.

*Nevins* at 22.

{¶35} Here, applying the reasoning of *Nevins*, the court concludes that the sum of $125,000, representing one-half of his interest in Dennis Zavinski's law firm and the sum of $33,475.28, representing fees earned by Dennis Zavinski before he died, are not collateral to or additional to damages attributable to ODOT's share of apportioned damages. The court further concludes that the magistrate erred in determining that the sums of $125,000 and $33,475.28 constituted "other collateral recovery" and should be applied to reduce the award against ODOT. The court determines that Zavinski's second and third objections should be sustained.

**5. The award against ODOT in the amount $1,489,261 should be reduced to $354,286.**

{¶36} By her fourth objection, Zavinski contends that the magistrate improperly deducted the total sum of $1,043,475.28 ($885,000 + $125,000 + $33,475.28) from the amount due from ODOT. Zavinski maintains that "judgment against ODOT, after deducting the *only* legitimate collateral benefit ($250,000 recovered from Karvo Paving, ODOT's contractor on the St. Rt. 14 project, from a lawsuit filed in the Court of Common Pleas of Summit County), should have been in the amount of $1,279,000." (Objections, at 10.) But see Objections at 2, footnote 1 ("Plaintiff respectfully submits, that for reasons that follow, the proper sum due and owing to Plaintiff from ODOT is $1,239,286, plus the filing fee based upon the Magistrate's Decision filed on January 5, 2018").

{¶37} The court has determined that the magistrate properly determined that $885,000 in uninsured motorist proceeds should be applied to reduce the recovery against ODOT in this case and that the magistrate improperly determined that $125,000 (one-half interest in Dennis Zavinski's law practice) and $33,475.28 (fees earned by Dennis Zavinski) should have been applied to reduce Zavinski's recovery against ODOT. Since Zavinski concedes that the amount of $250,000 properly is a "legitimate collateral benefit," it follows that the "other collateral recovery" in this case should be:

$885,000 (uninsured motorist coverage payment)
+ $250,000 (amount recovered from Karvo paving)
$1,135,000

Having concluded that the "other collateral recovery" in this case amounts to $1,135,000, an award of damages against ODOT should be apportioned as follows:

$1,489,261 (damages attributable to ODOT's negligence less 50%

attributable to joint tortfeasor's negligence)

- $1,135,000

  $354,261

+        $25   (filing fee)

  $354,286   (total damages attributable to ODOT's negligence, less collateral recovery, plus $25 filing fee)

The court overrules in part and sustains in part Zavinski's fourth objection.

### III. Conclusion

{¶38} Accordingly, for reasons set forth above, the court determines that Zavinski's first objection should be overruled, that Zavinski's second objection should be sustained, that Zavinski's third objection should be sustained, that Zavinski's fourth objection should be overruled in part and sustained in part, and that Zavinski's fifth objection should be overruled. The court also determines that ODOT's objection should be overruled. The court further determines that the magistrate's decision should be modified, that the magistrate's findings of fact contained in the decision should be adopted, and that the magistrate's conclusions of law should be modified, as set forth above.

PATRICK M. MCGRATH
Judge

[Cite as *Zavinski v. Dept. of Transp.*, 2018-Ohio-1503.]

| | |
|---|---|
| MONIQUE ZAVINSKI | Case No. 2013-00452JD |
| Plaintiff | Judge Patrick M. McGrath |
| v. | <u>JUDGMENT ENTRY</u> |
| OHIO DEPARTMENT OF TRANSPORTATION | |
| Defendant | |

{¶39} For the reasons set forth in the decision filed concurrently herewith, and upon independent review, the court MODIFIES Magistrate Renick's decision of January 4, 2018, ADOPTS Magistrate Renick's findings of fact contained in his decision, and MODIFIES Magistrate Renick's conclusions of law contained in the decision. Zavinski is entitled to monetary damages for her wrongful death claim in the amount of $354,286, which represents total damages in the amount of $1,489,261 less collateral recovery in the amount of $1,135.000, plus the $25 filing fee.

{¶40} The court OVERRULES plaintiff Monique Zavinski's first objection, SUSTAINS Zavinski's second and third objections, OVERRULES IN PART and SUSTAINS IN PART Zavinski's fourth objection, and OVERRULES Zavinski's fifth objection. The court OVERRULES defendant Ohio Department of Transportation's objection. Judgment is rendered in favor of plaintiff Monique Zavinski. Court costs are assessed against defendant Ohio Department of Transportation. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

PATRICK M. MCGRATH
Judge

cc:

William C Becker
Stacy L Hannan
Assistant Attorneys General
150 East Gay Street 18th Floor
Columbus OH  43215-3130

Dennis J Bartek
Natalie M Niese
2300 East Market Street Suite E
Akron OH  44312

Orville L Reed III
3475 Ridgewood Road
Akron OH  44333

**Filed March 27, 2018**
**Sent to S.C. Reporter 4/19/18**